[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 14-15308
Non-Argument Calendar
_____

D.C. Docket No. 2:13-cv-00247-KD-N

BERNDETTA HOWARD,

Plaintiff-Appellee,

versus

WILLIE HUDSON,

Defendant-Appellant,

CITY OF GREENSBORO, ALABAMA,

Defendant.

_____

Appeal from the United States District Court
for the Southern District of Alabama
_____

(June 3, 2015)

Before WILLIAM PRYOR, JULIE CARNES and FAY, Circuit Judges.

PER CURIAM:

Willie Hudson, the Chief of Police for the City of Greensboro, Alabama, appeals the partial denial of summary judgment against Berndetta Howard's complaint about the alleged violation of her civil rights, *see* 42 U.S.C. § 1983, and assault and battery under state law. Howard's complaint stemmed from an incident in a municipal building that led to her arrest and conviction for disorderly conduct and resisting arrest. The district court granted summary judgment in favor of Hudson and against Howard's claims of false arrest and a denial of due process. But the district court denied Hudson qualified immunity from Howard's claim of excessive force and statutory immunity from Howard's claim of assault and battery. We affirm.

## I. BACKGROUND

Hudson met with Howard, her brother, and her son, Brandon Robinson, to resolve a complaint against Robinson. The situation became tense when Howard's brother suggested that Hudson was engaging in partisan politics, and Howard's brother terminated the meeting by leaving Hudson's office. Hudson ordered officers to arrest Robinson and, after Howard condemned Hudson's decision, he arrested Howard for disorderly conduct. Later, Howard was convicted of that offense.

2

Hudson and Howard presented conflicting accounts of what transpired. Howard portrayed Hudson as an aggressor. Howard averred that she was "shove[d]" twice by Hudson in his office when she stepped between her brother and Hudson, and after she "criticiz[ed]" Hudson for arresting Robinson, Hudson grabbed and twisted Howard's arm. Howard asked to be released, but Hudson threatened to taser her. Without explanation, Hudson "drug" Howard through the police station and "pushed [her] into a desk," which caused her to hit her head on a computer monitor. Hudson and Howard "struggle[d]," and she struck her head on a second desk and fell to the floor with Hudson. After Hudson told Howard that she was "going to jail," she "surrendered" to a deputy.

Hudson and several eyewitnesses submitted affidavits establishing that Howard was combative and that Hudson used minimal force to control Howard. According to Hudson, he did not make physical contact with Howard during the meeting in his office; he attempted to follow Howard's brother out the door of his office, but Howard obstructed his path; and he touched Howard only as required to circumnavigate her. When Hudson instructed officers to arrest Robinson, Howard accosted Hudson, and Hudson ordered Howard to sit in his office and to calm down, but she refused to comply. Hudson arrested Howard for disorderly conduct. Because Hudson did not have handcuffs, he clutched Howard's arm to steer her from his office through the City Clerk's office en route to the jail. Howard resisted

3

violently, messed up desks in the Clerk's office, and fell to the floor with Hudson, all the while screaming obscenities. In the meantime, Hudson remained composed and held Howard's arm firmly to prevent her from fleeing until another officer arrived to relieve him of Howard.

The district court ruled that genuine disputes of material fact barred summary judgment against Howard's claims of excessive force and assault and battery. The district court denied Howard qualified immunity on the claim of excessive force because of the "vigorous dispute as to *the amount* and *level/severity of force* used by Chief Hudson and even whether he was making an arrest when the physical contact began." The district court also denied Hudson statutory immunity on Howard's claim of assault and battery based on the conflicting evidence about whether "Hudson acted willfully, maliciously, fraudulently, or in bad faith." *See Surrency v. Harbison*, 489 So. 2d 1097, 1104 (Ala. 1986).

## II. STANDARD OF REVIEW

We review *de novo* the denial of summary judgment based on qualified immunity. *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1247 (11th Cir. 2013). Summary judgment is appropriate when the evidence establishes that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *Id.* To make that determination, we construe all facts and draw

all reasonable inferences from the evidence in the light most favorable to the nonmoving party. *Id.*

## III. DISCUSSION

Hudson contests the denial of qualified immunity with respect to Howard's claim of excessive force. Hudson argues that his use of force was not excessive in the light of Howard's convictions and her admission that she "struggled" after Hudson grabbed her arm. Hudson also argues that the district court should have evaluated Howard's claim of excessive force as a violation of substantive due process under the Fourteenth Amendment. These arguments fail.

The district court did not err by denying Hudson qualified immunity. The record contains material issues of fact about when Hudson seized Howard and whether Hudson used excessive force to detain Howard. *See Feliciano*, 707 F.3d at 1253. Hudson submitted evidence that he responded to Howard's troublemaking by trying to quieten her, she refused to comply and he arrested her, and he responded to her violent resistance by maintaining a hold on her arm. But Howard provided a first-hand account that Hudson became irate, twisted Howard's arm, and "drug" her through the office, causing her to collide with office equipment and to tumble to the floor *before* telling her that she was under arrest. Summary judgment was inappropriate because of the direct contradictions in the evidence.

The district court correctly evaluated Howard's claim of excessive force under the reasonableness standard of the Fourth Amendment. The Fourth Amendment applies to "seizures," and the Supreme Court has explained that a "seizure occurs when there is a governmental termination of freedom of movement through means intentionally applied." *Scott v. Harris*, 550 U.S. 372, 381, 127 S. Ct. 1769, 1776 (2007) (internal alterations, quotation marks, and citation omitted). Howard was seized in Hudson's office when, according to Howard, Hudson grabbed her arm. Hudson contends that the district court "accepted [Howard's] position . . . that all the forceful actions . . . occurred before [she] was arrested," but the district court credited Howard's story that she had not yet been "told she was under arrest (. . . [and] could not have been actively resisting arrest or attempting to evade arrest)," and used that version of events, as it was required to do, *see Feliciano*, 707 F.3d at 1253, to determine whether the force Hudson used was excessive. *See Fils v. City of Aventura*, 647 F.3d 1272, 1288 (11th Cir. 2011).

Under Howard's version of events, Hudson was not entitled to qualified immunity. Qualified immunity is not appropriate if an officer violates a plaintiff's constitutional rights, and a use of force is excessive under the Fourth Amendment if it was "'objectively [un]reasonable' in light of the facts and circumstances confronting" the officer, *Graham v. Connor*, 490 U.S. 386, 397, 109 S. Ct. 1865, 1872 (1989). Viewed in the light most favorable to Howard, the evidence

6

established that Hudson responded to her verbal abuse with brutality unnecessary to seize Howard or to steer her to the jail. *See Fils*, 647 F.3d at 1289. Hudson did not have to contort Howard's arm or drag her around roughly to detain her for a minor offense, to prevent harm to himself or others, or to prevent her from fleeing. *See id.* at 1288–89. Although Howard subsequently "struggled" with Hudson, she did so arguably to avoid the unlawful force unleashed on her. A reasonable jury could find that Hudson's use of force was excessive and violated the Fourth Amendment.

## IV. CONCLUSION

We **AFFIRM** the denial of qualified immunity to Hudson on Howard's claim of excessive force.